UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LINDA STREETER,<br><br>Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL,<br><br>Acting Commissioner of Social Security,<br><br>Defendant. | Case No. 1:17-cv-01450-JDP<br><br>ORDER ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT<br><br>ECF Nos. 17, 22 |

Linda Streeter ("claimant") challenges the final decision of the Commissioner of Social Security ("Commissioner") denying her application for Social Security benefits. ECF No. 1. The case is submitted on claimant's motion for summary judgment, ECF No. 17, to which the Commissioner responded, ECF No. 18, and claimant replied, ECF No. 22. This matter is now ripe for review, and we will affirm the decision of the Commissioner.

On May 21, 2014, claimant applied for a period of disability and disability insurance benefits, claiming that she became disabled on January 5, 2014. On April 6, 2016, an Administrative Law Judge ("ALJ") held a hearing. AR 34-61. On July 13, 2016, the ALJ denied claimant's claims. AR 20-33. After unsuccessfully seeking review by the Appeals Council, claimant filed the present action on September 20, 2017.

## I. STANDARD OF REVIEW

Our review is limited: On appeal, we ask only whether substantial evidence supports the Commissioner's factual findings and whether the Commissioner applied the correct legal standards. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla of evidence but may be less than a preponderance. *See Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017). We will uphold the ALJ's decision if it is rational, even if there is another rational interpretation of the evidence, because we may not substitute our judgment for that of the Commissioner. *Id*. We review only the reasons provided by the Commissioner in the disability determination and may not affirm based on a ground upon which the Commissioner did not rely. *See Revels*, 874 F.3d at 654.

## II. ANALYSIS

The ALJ determines eligibility for Social Security benefits in a five-step sequential evaluation process, asking: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a medical impairment (or combination of impairments) that qualifies as severe; (3) whether the claimant's medical impairment meets or exceeds the severity of one of the impairments listed in the regulations; (4) whether the claimant can perform her past relevant work; and (5) whether the claimant can perform other specified types of work. *See Barnes v. Berryhill*, 895 F.3d 702, 704 n.3 (9th Cir. 2018); 20 C.F.R. § 416.920. The burden of proof is on the claimant during the first four steps of the inquiry but shifts to the Commissioner at the fifth step. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

At step one, the ALJ found that claimant had not engaged in substantial gainful activity since January 5, 2014. AR 22. At step two, the ALJ found that claimant had the severe impairments of osteoarthritis of the cervical spine, bilateral ankles, and bilateral feet; musculoskeletal strain of the neck and back; plantar fasciitis; and, gastroesophageal reflux disease. AR 22-23. At step three, the ALJ found that claimant did not have an impairment or combination of impairments that met or exceeded the severity of the listed impairments. AR 23. Before proceeding to step four, the ALJ found that claimant had the RFC to perform a wide range of medium work, with some limitations. AR 23-27. At step four, the ALJ found that claimant

could not perform past relevant work. AR 27. At step five, the ALJ found that significant numbers of jobs exist in the national economy that claimant can perform. AR 27-28. Claimant argues on appeal that the Commissioner did not meet her burden of proof at step five, that the ALJ improperly weighed medical evidence, and that the ALJ failed to make a proper credibility determination regarding claimant's testimony.

**A. Residual Functional Capacity to Perform Medium Work**

Claimant contends that the ALJ erred in determining at step five that she could do medium work because she cannot do the lifting, bending and stooping required for medium work—or the standing and walking. Claimant contends that she should have been evaluated under the light and sedentary categories, which she claims would have led to a determination that she is disabled.

Claimant's first argument, that she does not have the residual functional capacity ("RFC") to perform medium work, is not actually a challenge to the step-five analysis. It is a challenge to the ALJ's RFC determination, which takes place before proceeding to step four. This challenge relates to claimant's arguments regarding the weight of medical evidence. Therefore, we consider the claimant's RFC challenge before turning to the ALJ's vocational determination at step five.

A claimant's RFC is what she can still do despite her physical, mental, and other limitations. *See Mayes v. Massanari*, 276 F.3d 453, 460 (9th Cir. 2001) (citing 20 C.F.R. pt. 404, subpt. P, app. 2, 200.00(c)). The ALJ's determination of a claimant's RFC must be based on medical opinions and the totality of the record. *See* 20 C.F.R. §§ 416.927(b), 416.946(c). In determining an RFC, the ALJ is responsible for "determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)).

The ALJ found that "claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms," but decided that claimant's symptoms were not disabling to the degree alleged. AR 24. The ALJ then proceeded to give a detailed analysis supporting that RFC determination, stating, in part:

> In terms of the claimant's musculoskeletal disorders, overall, very
> few positive clinical signs such as diminished ranges of motion in
> the joints, reduced strength or decreased sensation in the

> extremities, abnormal gain, and positive orthopedic tests, were documented in the treatment records during the adjudicative period ([AR 292-323, 338-57, 361-4, 367-96]). In fact her neck, extremities, and gait were often noted to be normal during the period from June 2013 through April 2015 ([AR 299, 304, 345, 375]). Her back was also observed to be normal on April 14, 2015 ([AR 375]). In addition, there is little objective evidence that she requires any assistance device for ambulation.

AR 25. The ALJ went on to consider claimant's lack of treatment beyond pain medication and the lack of laboratory tests documenting claimant's alleged radicular symptoms. *Id.* The ALJ also considered the consultative examination, which was conducted by Dr. Sharma on August 16, 2014. AR 25.

The ALJ considered claimant's activities, which included washing dishes, doing laundry, light cleaning, driving, and working part-time making meals and doing light housework. AR 25. The ALJ also considered that claimant had no symptoms at the hearing. AR 25-26. And the ALJ considered that claimant received unemployment compensation throughout 2014, which required her to certify that she was willing and able to engage in work activity. AR 25.

The ALJ considered the medical opinions of Dr. Greene, Dr. Sharma, Dr. Talcherkar, and Dr. Wells. AR 26-27. Dr. Greene, a non-examining consultant, opined that claimant could perform medium work with no more than frequent stooping and crouching. AR 75-85. The ALJ gave this opinion substantial weight, noting that it was supported by "the generally adequate physical functioning that the claimant exhibited," and was consistent with claimant's "routine and conservative" treatments, the absence of laboratory findings, and claimant's activities. AR 26 (citing AR 34-61, 246-8, 292-323, 338-57, 361-4, 367-96).

Dr. Sharma, an examining consultant, opined that claimant could perform medium work with only occasional bending and stooping. AR 328-37. Dr. Talcherkar, a non-examining consultant, concurred with Dr. Sharma's opinion and added that claimant was also limited to only occasional crouching. AR 62-73. The ALJ gave these opinions some weight, noting their consistency with Dr. Greene's opinion that claimant could perform medium work. AR 26. However, the ALJ found that the opinions of Dr. Sharma and Dr. Talcherkar "understate the claimant's ability to bend, stoop, and crouch." *Id.* The ALJ found the portions of the opinions

evaluating claimant's ability to bend, stoop and crouch to be undercut by "the absence of positive findings or signs concerning the claimant's back," "the routine and conservative nature" of claimant's treatment, and "the absence of positive laboratory findings." *Id.*

Dr. Wells, a treating podiatrist, opined that claimant was restricted to less than sedentary exertion, with very little standing and walking. AR 365-6, 397-401. The ALJ gave Dr. Wells's opinion little weight, noting that it was contradicted by claimant's "generally adequate physical functioning," "routine and conservative" treatments, and activities. AR 26-27.

The ALJ ultimately found that claimant had the RFC "to perform medium work with some postural and environmental limitations." AR 27.

### 1. Medical Opinion Evidence

The weight given to medical opinions depends in part on whether the opinions are proffered by treating, examining, or non-examining professionals. *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to become acquainted with and observe the patient as an individual. *See id.* An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. *Id.* If a treating professional's opinion is contradicted by an examining professional's opinion that is supported by different independent clinical findings, the ALJ may resolve the conflict. *See Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995). A contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons. *See Lester*, 81 F.3d at 830. In any event, the ALJ need not give weight to conclusory opinions supported by minimal clinical findings. *See Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (rejecting treating physician's conclusory, minimally supported opinion). The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional. *See Lester*, 81 F.3d at 831.

Additionally, when weighing medical opinions, an ALJ is required to consider factors laid out in 20 C.F.R. § 404.1527(c). The required factors include the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship,

5

the extent to which the opinion is supported by evidence, the consistency of the opinion with the record as a whole, and whether the medical source is a specialist. 20 C.F.R. § 404.1527(c).

In this case, the ALJ gave the greatest weight to the opinion of a non-examining physician, Dr. Greene. Dr. Greene's opinion was consistent with the opinion of the examining physician Dr. Sharma to the extent that both found claimant to have the RFC to do medium work. As laid out above, the opinion that claimant can do medium work is well-supported by record evidence.

Dr. Greene also opined without concurrence from the examining physician that claimant could perform "frequent stooping and crouching." AR 26. To support rejecting the examining physician's opinion that claimant was limited to "occasional bending and stooping," AR 26, the ALJ must rely upon other evidence in the record that supports her determination. *See Lester*, 81 F.3d at 831. Here, the ALJ relied on medical records indicating that claimant's back, neck, and gait were normal, and that claimant was generally in good physical shape. AR 26 (citing AR 292-323, 338-57, 361-4, 367-96). Claimant had a physical exam on April 14, 2015, during which a doctor described her neck as "non-tender," her spine as "normal without deformity or tenderness," and her musculoskeletal system as "normal" with no "defects," "decreased range of motion," or "atrophy" in the head, neck, spine, ribs, pelvis, or extremities. AR 375. Thus, there is medical evidence in the record that support the non-examining physician's opinion. The record evidence as to claimant's work activity and daily activities provides additional support for the conclusion that claimant was capable of frequent stooping and crouching. AR 34-61, 246-8. Thus, the ALJ properly weighed Dr. Greene's opinion that claimant was capable of frequent stooping and crouching; it is supported by other evidence in the record.[1] *See Lester*, 81 F.3d at 831.

Claimant argues that her treating podiatrist's opinion should have been given more

---

[1] Furthermore, even if the ALJ had erred in failing to limit claimant to only occasional stooping and crouching, the ultimate disability determination would remain the same because claimant could still perform the cleaner II and hand packer jobs discussed below. *See Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) ("[A]n ALJ's error is harmless where it is inconsequential to the ultimate nondisability determination.") (internal citations and quotation marks omitted).

6

weight. However, as discussed above, the ALJ may decide to give a treating physician's opinion less weight than a nontreating physician's opinion. *See Andrews*, 53 F.3d at 1041. In this case, the ALJ gave specific and legitimate reasons for according the treating physician's opinion little weight and the conflicting examining and non-examining physicians' opinions more weight. *See* AR 24-27. The ALJ's determinations regarding the weight of the medical opinions informing the ALJ's ultimate RFC determination are supported by substantial evidence.

### 2. Credibility Finding

Claimant argues that her credibility was discounted without specific reasons supported by the record. ECF No. 17 at 12. "An ALJ is not required to believe every allegation of disabling pain or other non-exertional impairment." *Orn v. Astrue*, 495 F.3d 625, 635 (9th Cir. 2007) (internal citations omitted). An ALJ must engage in a two-step analysis to determine whether a claimant's testimony concerning subjective pain or symptoms is credible. *See Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* (internal quotation marks omitted). "[T]he claimant is not required to show her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Id.* Second, if there is no evidence of malingering, the ALJ may reject a claimant's testimony about the severity of the pain "only by offering specific, clear and convincing reasons for doing so." *Id.* at 1015; *see also Trevizo v. Berryhill*, 871 F.3d 664, 679 (9th Cir. 2017) (reaffirming the application of the two-step analysis in *Garrison* after Social Security Ruling 16-3p (2016)).

Factors that an ALJ may consider in assessing a claimant's subjective pain and symptom testimony include the claimant's daily activities; the location, duration, intensity and frequency of the pain or symptoms; factors that cause or aggravate the symptoms; the type, dosage, effectiveness or side effects of any medication; other measures or treatment used for relief; functional restrictions; and other relevant factors. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1040 (9th Cir. 2007); *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002). In assessing the

claimant's credibility, the ALJ may also consider "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (internal quotation marks and citations omitted).

The ALJ followed the two-step analysis and found that claimant's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," but that claimant's statements about "the intensity, persistence and limiting effects of these symptoms are not entirely consistent" with the record. AR 24. Specifically, the ALJ found claimant's statements not entirely consistent with medical records, medical opinions, conservative treatment, unemployment compensation, part-time work, and daily activities. AR 24-7. Thus, the ALJ offered "specific, clear and convincing reasons" for partially discounting claimant's statements about the limiting effects of her symptoms. *Garrison*, 759 F.3d at 1015.

Contrary to claimant's assertions, the ALJ did consider all the medical evidence that claimant asserts should have been reviewed. *Compare* ECF No. 17 at 20-23 (asserting that the ALJ failed to consider certain medical evidence) *with* AR 24-27 (evaluating the medical evidence). For example, claimant argues that the ALJ ignored x-rays contained in the record because the ALJ referenced a dearth of recent x-rays in support of claimant's musculoskeletal disorders. AR 25. However, the ALJ considered the reports of x-rays in the record and specifically cited them in her findings. AR 23-24.[2]

Furthermore, the extensive medical evidence summarized above provides clear and convincing reasons supported by substantial evidence for the ALJ's credibility determination. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008). The ALJ

---

[2] Similarly, claimant's argument that the ALJ ignored her physical therapy is not supported by the record because a one-page consent form for chiropractic care dated June 9, 2004, AR 289, does not discredit the ALJ's finding that claimant's musculoskeletal disorders were not as aggressively treated as one would expect if claimant was experiencing the level of debilitation that she claimed during the relevant period, AR 25.

8

considered claimant's osteoarthritis of the cervical spine, bilateral ankles, and bilateral feet; musculoskeletal strain of the neck and back; plantar fasciitis; gastroesophageal reflux disease; hypertension and hyperlipidemia; diverticulosis; and, joint problems in the shoulders, hands, and knees. AR 22-27. Specifically, the ALJ considered the claimant's medical records, which showed that claimant had few positive clinical signs of musculoskeletal disorders, and noted that her neck, back, extremities and gait were often described as normal. AR 25 (citing medical records at AR 292-323, 338-57, 361-4, 367-96). The ALJ further considered and gave weight to the medical opinions of Dr. Greene, Dr. Sharma, and Dr. Talcherkar, who opined, after examining claimant and/or reviewing claimant's medical records, that claimant had the capacity to perform medium work with some limitations. AR 26 (citing medical opinions and records at AR 62-73, 75-85, 292-323, 328-57, 361-4, 367-96). Thus, the ALJ's assessment was supported by substantial evidence, and she gave clear and convincing reasons for her partially adverse credibility determination. AR 26; *see Carmickle*, 533 F.3d at 1162.

For all of these reasons, the ALJ's RFC determination is supported by substantial evidence and contains no reversible error.

**B. Vocational Determination**

Claimant alleges that the ALJ should have applied the Medical-Vocational Guidelines, also known as the grids, to find that she is disabled, and that claimant cannot perform the jobs of cleaner II, hospital cleaner, or hand packer. The ALJ's evaluation process at step five proceeded as follows:

> Once a claimant has established that he or she suffers from a severe impairment that prevents the claimant from doing any work he or she has done in the past, the claimant has made a prima facie showing of disability. At this point—step five—the burden shifts to the Commissioner to show that the claimant can perform some other work that exists in "significant numbers" in the national economy, taking into consideration the claimant's residual functional capacity, age, education, and work experience. 20 CFR § 404.1560(b)(3). There are two ways for the Commissioner to meet the burden of showing that there is other work in "significant numbers" in the national economy that claimant can perform: (a) by the testimony of a vocational expert, or (b) by reference to the Medical-Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2. . . . At step five, the ALJ can call upon a vocational expert to testify as to: (1) what jobs the claimant, given his or her residual

> functional capacity, would be able to do; and (2) the availability of such jobs in the national economy. . . . In some cases, it is appropriate for the ALJ to rely on the Medical-Vocational Guidelines [("the grids")] to determine whether a claimant can perform some work that exists in "significant numbers" in the national economy. . . . The Commissioner's need for efficiency justifies use of the grids at step five where they *completely and accurately* represent a claimant's limitations. In other words, a claimant must be able to perform the *full range* of jobs in a given category, i.e., sedentary work, light work, or medium work.

*Tackett v. Apfel*, 180 F.3d 1094, 1100-01 (9th Cir. 1999) (internal citations omitted).

Claimant seeks the determination that she can only perform light or sedentary work, and thus that she is disabled per the grids—given her age, education, and skill set. ECF No. 17 at 11-12. As discussed above, the ALJ's RFC determination is supported by substantial evidence. Thus, claimant's argument that she is limited to light or sedentary categories of work must fail.

The ALJ's use of a vocational expert was proper in this case because claimant had some non-exertional limitations and thus could not perform the full range of jobs in the category of medium work. *See Tackett*, 180 F.3d at 1001. The jobs that the ALJ found to be available to claimant, relying on the vocational expert, met the ALJ's limitations related to exertion, stooping and crouching, and climbing.[3] The cleaner II job is medium exertion with occasional stooping, no crouching, and no exposure to high places or moving mechanical parts. CLEANER II, DICOT 919.687-014. The hospital cleaner job is medium exertion with frequent stooping, occasional crouching, and no exposure to high places or moving mechanical parts. CLEANER, HOSPITAL, DICOT 323.687-010. The hand packer job is medium exertion with no stooping, no crouching, and no exposure to high places or moving mechanical parts. PACKAGER, HAND, DICOT 920.587-018. Therefore, the ALJ met her burden at step five and properly relied on both the testimony of the vocational expert and the Dictionary of Occupational Titles and its companion publications to determine that claimant can perform jobs that exist in significant numbers in the national economy.

---

[3] The ALJ found that claimant "can lift, carry, push, and pull 25 pounds frequently and 50 pounds occasionally. She is limited to no more than frequent stooping and crouching. She cannot climb ladders, ropes, or scaffolds or work around unprotected heights or moving mechanical parts." AR 24.

### III. CONCLUSION AND ORDER

Claimant Linda Streeter's motion for summary judgment on appeal from the administrative decision of the Commissioner of Social Security is denied, and the decision of the Commissioner of Social Security is affirmed.  The clerk of court is directed to (1) enter judgment in favor of defendant and (2) close this case.

IT IS SO ORDERED.

Dated:    March 5, 2019                                    _____
                                                                        UNITED STATES MAGISTRATE JUDGE

No. 204